

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-26-2004

# Hackett v. Price

Precedential or Non-Precedential: Precedential

Docket No. 01-9008

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Hackett v. Price" (2004). *2004 Decisions.* Paper 351.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/351

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-9008

RICHARD HACKETT

v.

JAMES PRICE, Superintendent of SCI Greene;
THE DISTRICT ATTORNEY OF PHILADELPHIA COUNTY;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

James S. Price, Superintendent of the State Correctional
Institution, Greene County; The District Attorney of
Philadelphia County; Michael Fisher, Attorney General of
Pennsylvania,

Appellants

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 99-cv-05434)
District Judge: Honorable John R. Padova

Argued July 8, 2002

Before: BECKER, Chief Judge*, AMBRO and GREENBERG, Circuit Judges

(Opinion filed: August 26, 2004)

*Judge Becker completed his term as Chief Judge on May 4, 2003.

David Curtis Glebe (Argued)
  Assistant District Attorney
Thomas W. Dolgenos
  Chief, Federal Litigation
Ronald Eisenberg
  Deputy District Attorney, Law Division
Arnold H. Gordon
  First Assistant District Attorney
Lynne Abraham
  District Attorney
Office of District Attorney
1421 Arch Street
Philadelphia, PA   19102-1582

    *Attorneys for Appellants*

Norris E. Gelman, Esquire (Argued)
620 Chestnut Street, Suite 940
Public Ledger Building
Philadelphia, PA   19106

    *Attorney for Appellee*

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

Richard Hackett was convicted by a Pennsylvania jury of murder in the first degree and sentenced to death. His direct appeals and post-conviction claims in state court were unsuccessful. Hackett then filed in federal court a petition for a writ of *habeas corpus*, which the District Court granted after determining there is a reasonable likelihood the jury interpreted the trial court's instructions and verdict form to preclude it from considering

2

mitigating evidence in violation of the Eighth Amendment. The Commonwealth has appealed, and we reverse. The jury found unanimously that no mitigating circumstance exists. Because of that finding, we conclude that Hackett fails to show a reasonable likelihood that the jurors, individually or collectively, applied the challenged instruction and verdict form in a way that prevented the consideration of constitutionally relevant evidence.[1]

## I. Facts & Procedural History

As did the District Court, we recite only briefly the facts of this case as set forth by the Pennsylvania Supreme Court. *See Hackett v. Price*, 212 F. Supp. 2d 382, 386 (E.D. Pa. 2001) (*Hackett*) (citing *Commonwealth v. Hackett*, 627 A.2d 719 (Pa. 1993)). Hackett and a friend, Marvin Spence, conspired to kill Gregory Ogrod. Hackett lived in Ogrod's house, though their living situation had become hostile. Spence and Ogrod were partners in the sale of illegal drugs, but their business relationship deteriorated after Spence stole money that Ogrod had given him to purchase drugs for resale. On July 31, 1986, at 3:30 a.m., three men armed with knives and a crowbar entered the basement of Ogrod's home, where he and his girlfriend, Maureen Dunne, were sleeping. The

---

[1]We delayed issuing this decision because the Supreme Court accepted *certiorari* in a case from our Court that raised the possibility of addressing the question before us. *See Beard v. Banks*, 539 U.S. 987 (2003) (order granting *certiorari* in *Banks v. Horn*, 316 F.3d 228 (3d Cir.)). The Supreme Court, however, decided *Beard v. Banks* without reaching that question. No. 02-1603, 2004 WL 1402567, at *4 n.2 (June 24, 2004) (declining to address "whether the Court of Appeals also erred in concluding that the Pennsylvania Supreme Court unreasonably applied *Mills*").

3

assailants repeatedly struck the couple. Dunne, stabbed through the heart, was killed. Ogrod managed to resist, and the attackers fled. Testimony at trial established the assailants as Hackett, Spence, James Gray, and Keith Barrett. *Id.*

Hackett was charged with murder in the first degree, criminal conspiracy, possession of instruments of crime, and aggravated assault. In 1988 he was tried jointly with Spence, Gray, and Barrett in the Court of Common Pleas of Philadelphia County. All four defendants were convicted of first degree murder. *Id.; see also Commonwealth v. Spence*, 627 A.2d 1176 (Pa. 1993); *Commonwealth v. Gray*, 608 A.2d 534 (Pa. 1992).

> Pennsylvania law requires that
>
> [b]efore the jury retires to consider the sentencing verdict, the court shall instruct the jury . . . [that] the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance . . . and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

42 Pa. Cons. Stat. Ann. § 9711(c)(1)(iv). At the capital sentencing hearing the Commonwealth argued two aggravating circumstances: Hackett conspired to pay another person to kill the victim, and he created a grave risk to another during the murder of the victim. *Commonwealth v. Hackett*, 627 A.2d at 723 (citing 42 Pa. Cons. Stat. Ann. §§ 9711(d)(2), (7)). Hackett offered countervailing evidence of mitigating circumstances – including a history of learning and social disabilities, a low level of maturity, signs of depression and suicidal problems, limited interpersonal resources, and alcohol abuse. *See Hackett*, 212 F. Supp. 2d at 407 n.20; *see also* 42 Pa. Cons. Stat. Ann. §§ 9711(e)(1)-(8)

4

(listing statutory mitigating circumstances).

The jury sentenced Hackett to death, finding both of the aggravating circumstances argued by the Commonwealth and no mitigating circumstance. Spence also was sentenced to death, the jury in his case finding aggravating circumstances that outweighed any mitigating circumstance.[2] Gray and Barrett were sentenced to life imprisonment.[3]

On direct appeal, the Pennsylvania Supreme Court affirmed Hackett's conviction and sentence. *Commonwealth v. Hackett*, 627 A.2d at 721. The Court rejected, *inter alia*, his argument "that the trial court erred in its charge to the jury during the penalty phase by failing to instruct the jury they need not be unanimous in finding mitigating circumstances in accord with *Mills v. Maryland*, 486 U.S. 367 (1988)." *Id.* at 725.

Hackett next filed a petition for relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. Cons. Stat. Ann. § 9541 *et seq*. The Court of Common Pleas denied Hackett's petition for relief and the Pennsylvania Supreme Court affirmed. *Commonwealth v.*

---

[2]The Pennsylvania Supreme Court, in affirming Spence's sentence on direct appeal, stated that "[t]he jury found the two aggravating [circumstances argued by the Commonwealth] and no mitigating circumstances, and returned a sentencing verdict of death." *Spence*, 627 A.2d at 1180. This is not correct. Spence's verdict sheet, submitted as part of the record in Hackett's appeal before this Court, indicates the jury found the same two aggravating circumstances as it had in Hackett's case, but as to Spence the jury also found the following mitigating circumstance: "The defendant has no significant history of prior criminal convictions." Accordingly, the jury "found unanimously . . . one or more aggravating circumstances which outweigh any mitigating circumstance[]."

[3]*Gray*, 608 A.2d at 536. The verdict sheets for Gray and Barrett could not be located. That they were sentenced to life imprisonment for first degree murder means the jury either found no aggravating circumstance or found one or more aggravating circumstances that were outweighed by one or more mitigating circumstances.

5

*Hackett*, 735 A.2d 688 (Pa. 1999). The United States Supreme Court denied *certiorari. Hackett v. Pennsylvania*, 528 U.S. 1163 (2000).

Hackett then petitioned for a writ of *habeas corpus* under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Pennsylvania. *Hackett*, 212 F. Supp. 2d at 385. He challenged the guilt and sentencing phases of his trial on six grounds. The District Court denied five of these claims, but concluded that Hackett's allegations of *Mills* error entitled him to relief. The District Court "determine[d] that the state court's failure to apply the legal standard from *Boyde v. California*, 494 U.S. 370 (1990), in adjudicating [Hackett's] *Mills* claim was contrary to clearly established federal law as determined by Supreme Court of the United States." *Id.* at 400. The District Court "further conclude[d] on plenary review that the instructions and verdict form created a reasonable likelihood that the jury understood the instructions in such a way that it was improperly prevented from considering mitigating evidence." *Id.* Hackett's sentence was vacated without prejudice to the Commonwealth to sentence him to life imprisonment or to conduct such further proceedings as may be appropriate under Pennsylvania law, including a new sentencing hearing, within 180 days. *Id.* at 413. The Commonwealth appealed, and the District Court's ruling on Hackett's *Mills* claim is the sole issue before us. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

## II. Standard of Review

Congress in 1996 passed the Antiterrorism and Effective Death Penalty Act (AEDPA), which "altered the standard of review that a federal habeas court must apply to a state prisoner's claim that was adjudicated on the merits in state court." *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 368 (3d Cir. 2002) (citing *Williams v. Taylor*, 529 U.S. 362, 402-13 (2000) (interpreting 28 U.S.C. § 2254(d)(1)). *See also Dunn v. Colleran*, 247 F.3d 450, 456-57 (3d Cir. 2001) (explaining *Williams*). More specifically, AEDPA "placed a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners." *Dunn*, 247 F.3d at 456-57 (quoting *Williams*, 529 U.S. at 399). Because Hackett filed his *habeas* petition after AEDPA became effective, we follow Congress' directive and give greater deference to state courts' factual findings and legal determinations. *See id.* at 457. According to the relevant provision of AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1).

Prior decisions of our Court explain thoroughly the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1). For instance, in *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000), we noted that Justice O'Connor delivered the opinion

7

of the Supreme Court in *Williams* as to AEDPA's amended standard of review and

described the operation of both clauses as follows:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied – the state court adjudication resulted in a decision that
> (1) "was contrary to . . . clearly established Federal law, as determined by the
> Supreme Court of the United States," or (2) "involved an unreasonable
> application of . . . clearly established Federal law, as determined by the
> Supreme Court of the United States." Under the "contrary to" clause, a federal
> habeas court may grant the writ if the state court arrives at a conclusion
> opposite to that reached by this Court on a question of law or if the state court
> decides a case differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably applies
> that principle to the facts of the prisoner's case.

(quoting *Williams*, 529 U.S. at 412-13). *Werts* further noted that, per *Williams*, the

appropriate inquiry under the "unreasonable application of" standard was "whether the

state court's application of clearly established federal law was objectively unreasonable."

228 F.3d at 196 (quoting 529 U.S. at 409). An unreasonable application of federal law

involves more than merely an incorrect or erroneous application of federal law: "[A]

federal habeas court may not grant relief unless that court determines that a state court's

incorrect or erroneous application of clearly established federal law was also

unreasonable." *Id.* (citing *Williams*, 529 U.S. at 411).

Werts also noted that, one year prior to *Williams*, an *en banc* decision of our Court,

*Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir. 1999), had construed the

procedure for applying § 2254(d)(1)'s standard of review:

8

> First, the federal habeas court must determine whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only if the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." *O'Brien [v. Dubois]*, 145 F.3d [16, 24-25 (1st Cir. 1998)]. In the absence of such a showing, the federal habeas court must ask whether the state court decision represents an "unreasonable application of" Supreme Court precedent: that is, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified. If so, then the petition should be granted.

*Werts*, 228 F.3d at 196-97 (quoting *Matteo*, 171 F.3d at 891). We further stated our belief that *Matteo* was in accord with the Supreme Court's subsequent decision in *Williams*, as both opinions make the distinction "that the 'contrary to' and 'unreasonable application of' clauses should be accorded independent meaning." *Id.* at 197 (quoting *Williams*, 529 U.S. at 405).

In summary, our review under AEDPA is to proceed as follows. "[W]e must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Id.* (citing *Matteo*, 171 F.3d at 888). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Id.* (quoting *Matteo*, 171 F.3d at 888). "If we determine that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then we are required to advance to the second step in the analysis – whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Id.* (citing *Matteo*, 171 F.3d at 888). In performing this inquiry, "we

9

are not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices." *Id.* (citing *Matteo*, 171 F.3d at 889). Rather, the state court's application of Supreme Court precedent must have been "objectively unreasonable," *i.e.*, "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* (quoting *Matteo*, 171 F.3d at 890); *see also Price v. Vincent*, 538 U.S. 634, 636, 643 (2003) (unanimously reversing a decision to grant habeas relief as "exceed[ing] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)" because "[e]ven if we agreed with the Court of Appeals that the Double Jeopardy Clause should be read to prevent continued prosecution of a defendant under these circumstances, it was at least reasonable for the state court to conclude otherwise.").

## III. Discussion

The District Court in this case concluded that the Pennsylvania Supreme Court's decision rejecting Hackett's *Mills* claim was "contrary to" clearly established federal law, and thus determined that it (the District Court) was "not constrained by the deferential standard of [AEDPA's] section 2254(d)(1)." 212 F. Supp. 2d at 406. We exercise plenary review over this legal conclusion, *Stevens*, 295 F.3d at 368, and disagree with the District Court that AEDPA deference does not apply to Hackett's petition. Before

10

explaining our reasons for so concluding, however, we first – as instructed by *Williams* – identify and discuss the applicable Supreme Court precedent.

## A. The Supreme Court Standard: *Mills, McKoy & Boyde*

### 1. *Mills*

We begin with *Mills v. Maryland*, 486 U.S. 367, 384 (1988), where the Supreme Court vacated a death sentence after concluding there was a "substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." The potential for such an outcome violated the well-established rule that the sentencer in a capital case must be permitted to consider (and, conversely, must not be precluded from considering) all mitigating evidence offered by a defendant in arguing for a sentence less than death. *Id.* at 374 (citing *Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Lockett v. Ohio*, 438 U.S. 586 (1978); *Skipper v. South Carolina*, 476 U.S. 1 (1986)).

The Maryland sentencing scheme at issue in *Mills* worked in the following manner, depending on the jury's findings of aggravating and mitigating circumstances. The jury first was instructed to determine whether it unanimously found one or more of the aggravating circumstances listed on the verdict form. If it did not, the defendant was sentenced to life imprisonment. If the jury did unanimously find one or more aggravating

11

circumstance(s), it next was instructed to determine whether it unanimously found one or more of the mitigating circumstances listed on the verdict form. If it did not, the defendant was sentenced to death. If the jury unanimously found one or more mitigating circumstance(s), it next was instructed to determine whether it unanimously found that the mitigating circumstance(s) outweighed the aggravating circumstance(s). If the answer to this question was yes, the defendant was sentenced to life imprisonment. If the answer was no – *i.e.*, the mitigating circumstance(s) did not outweigh the aggravating circumstance(s) – the defendant was sentenced to death. *Id.* at 384-89.

The petitioner in *Mills* argued that the sentencing scheme was constitutionally infirm because "even if some or all of the jurors were to believe *some* mitigating circumstance or circumstances were present, unless they could unanimously agree on the existence of the *same* mitigating factor, the sentence necessarily would be death." *Id.* at 371 (emphases in text). For example, if only eleven of twelve jurors agreed that one or more mitigating circumstance(s) existed – or if all twelve jurors agreed that one or more mitigating circumstance(s) existed, but did not agree as to the same circumstance(s) – individual jurors could not give any effect to that mitigating evidence at all, and the jury could not deliberate whether the mitigating circumstance(s) merited a sentence of life imprisonment instead of death. *Id.* at 373-74.

Thus, the "critical question" in *Mills* was "whether petitioner's interpretation of the sentencing process is one a reasonable jury *could have* drawn from the instructions

12

given by the trial judge and from the verdict form employed in this case." *Id.* at 375-76

(emphasis added). The verdict form required the jury to mark either "yes" or "no" beside

each of the listed mitigating circumstances. If the jury understood that every time it

marked "no" beside a mitigating circumstance it was indicating it had unanimously

concluded the petitioner had failed to prove that circumstance, then the death sentence

was to be upheld, as each juror had considered and rejected all proffered mitigating

evidence. But, on the other hand, if the jury believed it was to mark "no" if it could not

unanimously agree whether the same mitigating evidence existed, even one holdout juror

could prevent the other jurors from weighing mitigating evidence against aggravating

evidence, and the death sentence could not stand. *Id.* at 376. Concluded the Court:

> [T]here is a *substantial probability* that reasonable jurors, upon receiving the
> judge's instructions in this case, and in attempting to complete the verdict form
> as instructed, well may have thought they were precluded from considering any
> mitigating evidence unless all 12 jurors agreed on the existence of a particular
> such circumstance. Under our cases, the sentencer must be permitted to
> consider all mitigating evidence. The *possibility* that a single juror could block
> such consideration, and consequently require the jury to impose the death
> penalty, is one we dare not risk.

*Id.* at 384 (emphases added).

## 2. *McKoy*

The Supreme Court revisited *Mills* two years later in *McKoy v. North Carolina*,

494 U.S. 433, 435 (1990), and held that the unanimity requirement in North Carolina's

capital sentencing scheme – which "prevent[ed] the jury from considering, in deciding

whether to impose the death penalty, any mitigating factor that the jury does not

13

unanimously find" – was unconstitutional because it prevented the sentencer from considering all mitigating evidence. *McKoy* repeated the rule in *Mills* that a death sentence cannot stand if the jury instructions and verdict form created a substantial probability that reasonable jurors thought they were precluded from considering mitigating evidence unless the jury unanimously agreed on the existence of that particular circumstance. *Id.* at 438 (citing *Mills*, 486 U.S. at 384). The Court also noted that *Mills* reasoned that allowing a holdout juror to preclude other jurors from considering mitigating evidence violated the principle that a sentencer may not be prevented from giving effect to all mitigating evidence. *Id.* (citing *Mills*, 486 U.S. at 375).

The North Carolina Supreme Court attempted to distinguish *Mills* by concluding that – whereas Maryland's sentencing scheme required the jury to impose the death penalty if it found i) aggravating circumstances and no mitigating circumstances or ii) aggravating circumstances that outweighed any mitigating circumstances – the North Carolina procedure allowed the jury to recommend a sentence of life imprisonment even without a finding of mitigating circumstances. *Id.* (discussing the decision of the North Carolina Supreme Court). The United States Supreme Court, however, concluded that the purported distinction did not place the statute outside of the scope of *Mills*. The fact remained that the jury, even if it recommended a sentence of life imprisonment, was required to make its decision based only on circumstances it unanimously found. *Id.* at 439. "The unanimity requirement thus allows one holdout juror to prevent the others

14

from giving effect to evidence that they believe calls for a 'sentence less than death.'" *Id.* (quoting *Eddings*, 455 U.S. at 110). In addition, even if all twelve jurors agreed that some mitigating circumstances were present, they could not give effect to that evidence without unanimity as to the same circumstance, precisely the violation found in *Mills*. *Id.* The Court noted that "[o]ur decision in *Mills* was not limited to cases in which the jury is *required* to impose the death penalty if it finds that aggravating circumstances outweigh mitigating circumstances or that no mitigating circumstances exist at all." *Id.* at 439-40 (emphasis in text). "Rather, we held that it would be the 'height of arbitrariness to allow *or* require the imposition of the death penalty' where 1 juror was able to prevent the other 11 from giving effect to mitigating evidence." *Id.* at 440 (quoting *Mills*, 486 U.S. at 374) (emphasis in text).

### 3. *Boyde*

The same day it issued *McKoy*, the Supreme Court decided *Boyde v. California*, 494 U.S. 370 (1990). *Boyde* clarified the legal standard for jury instructions in death penalty cases asserted to be "ambiguous and therefore subject to an erroneous interpretation." *Id.* at 380. The Court first noted that "[i]n assessing the effect of a challenged jury instruction, we follow the familiar rule . . . 'that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Id.* at 378 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)). The Court next recognized that "[t]he legal standard for reviewing jury instructions

15

claimed to restrict impermissibly a jury's consideration of relevant evidence is less than clear from our cases." *Id.* For example, in *Mills* alone

> we alluded to at least three different inquiries for evaluating such a challenge: whether reasonable jurors "*could have*" drawn an impermissible interpretation from the trial court's instructions; whether there is a "*substantial possibility* that the jury may have rested its verdict on the 'improper' ground"; and how reasonable jurors "*would have*" applied and understood the instructions.

*Id.* at 379 (internal citations omitted) (emphasis in text). The Court stated that "[a]lthough there may not be great differences among these various phrasings, it is important to settle upon a single formulation for this Court and other courts to employ in deciding this kind of federal question."[4]

*Boyde* thus held that the proper inquiry for reviewing a jury instruction that is ambiguous and therefore subject to erroneous interpretation "is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Id.* at 380. However, a defendant "need not establish that the jury was more likely than not[5] to have been

---

[4]*Id.* While the *Boyde* majority indicated it merely was clarifying the proper standard of review, the four Justices in dissent vehemently disagreed. "To the contrary, in reviewing criminal judgments we have described the difference between a standard that demands reasonable certainty on the one hand, and one that tolerates significant doubt on the other, as the difference that sets apart 'a society that values the good name and freedom of every individual.'" *Id.* at 394 n.2 (Marshall, J., dissenting) (quoting *In re Winship*, 397 U.S. 358, 363-64 (1970)).

[5]As one definition of "likely" is "having a better chance of existing or occurring than not," Webster's Third New International Dictionary 1310 (1971), someone could plausibly argue that "reasonable likelihood" is not a lesser standard than "more likely than not." *See also* Funk & Wagnall's New Standard Dictionary of the English Language

16

impermissibly inhibited by the instruction," though "a capital sentencing proceeding is

not inconsistent with the Eighth Amendment if there is *only a possibility* of such an

inhibition." *Id.* (emphasis added). The Court further explained its reasons for requiring a

"reasonable likelihood" of jury confusion, rather than the various formulations in *Mills*:

> This "reasonable likelihood" standard, we think, better accommodates the concerns of finality and accuracy than does a standard which makes the inquiry dependent on how a single hypothetical "reasonable" juror could or might have interpreted the instruction. There is, of course, a strong policy in favor of accurate determination of the appropriate sentence in a capital case, but there is an equally strong policy against retrials years after the first trial where the claimed error amounts to no more than speculation. Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Id.* at 380-81.[6]

*     *     *     *     *

In sum, a petitioner's *Mills* claim alleging juror confusion as to unanimity must be

examined under *Boyde* to determine whether there is a reasonable likelihood (as opposed

to merely a possibility) that jurors have applied the challenged instruction in a way that

---

1434 (1941).

[6]It may appear that *Boyde* focuses on the confusion of the entire jury and not a single juror. We avoid that avenue of analysis. Its logical end is a standard that requires all twelve jurors to be confused by the jury instruction in a capital sentencing case. But would the taint of confusion be any less to a defendant if but eleven (or fewer) jurors were confused? We believe instead that the Supreme Court focuses more aptly on the likeliness legal standard for an allegedly confusing instruction.

17

prevents the consideration of constitutionally relevant mitigating evidence.

## B. Third Circuit Application: *Zettlemoyer*, *Frey* & *Banks*

Three times previously our Court has applied the *Boyde* standard of review to a

*Mills* claim, with varying results. We review each below.

### 1. *Zettlemoyer*

In a 1991, pre-AEDPA decision, *Zettlemoyer v. Fulcomer*, 923 F.2d 284 (3d Cir.

1991), the petitioner argued the following trial court instruction erroneously suggested

that the jury's finding on mitigating circumstances must be unanimous:

> The verdict, of course, must be unanimous. Again, if you find unanimously, beyond a reasonable doubt, the aggravating circumstance that I have mentioned, the only one that's applicable, that the victim was a prosecution witness to a felony and it was committed and he was murdered so that he would not testify, that is an aggravating circumstance. If you find that aggravating circumstance and find no mitigating circumstances or if you find that the aggravating circumstance which I mentioned to you outweighs any mitigating circumstance you find, your verdict must be the death penalty. If, on the other hand, you find that the Commonwealth has not proven an aggravating circumstance beyond a reasonable doubt or if they have, that the mitigating circumstances outweight [sic] the aggravating circumstances, then you must bring in a verdict of life imprisonment.
> . . . .
> . . . Under the law, as I said, you are obligated by your oath of office to fix the penalty at death if you unanimously agree and find beyond a reasonable doubt that there is an aggravating circumstances (sic) and either no mitigating circumstance or that the aggravating circumstance outweighs any mitigating circumstances.

*Id.* at 307-08. In addition, the jury completed the following verdict form:

> 1. We the jury unanimously sentence the defendant to: _[X]_ death ___ life imprisonment.
> 2. (To be used in the sentence if death)

18

> We the jury have found unanimously:
> ___ at least one aggravating circumstance and no mitigating circumstance.
> The aggravating circumstance is ___.
> _[X]_ the aggravating circumstance outweighs [the] mitigating circumstances.
> The aggravating circumstance is [the murdering of a prosecution witness to prevent testimony in a felony case.]

*Id.* at 308.

We concluded that the petitioner had "failed to show that there is a reasonable likelihood that the jury applied these instructions in a way that precluded its consideration of any relevant mitigating evidence." *Id.* First, the instructions were not defective. The jury was not directed that it must find unanimously the existence of a particular mitigating circumstance or told that it could weigh only those mitigating circumstances which it found unanimously, distinguishing that case from *Mills*. Also, the trial court correctly instructed the jury that its *verdict* must be unanimous, but this instruction did not preclude the jury from considering relevant evidence in deliberating in anticipation of the verdict. *Id.* Second, the verdict form likewise was permissible. The language explicitly required unanimity as to aggravating circumstances. The absence of a similar instruction as to mitigating circumstances indicated that unanimity was not required. To focus the jury, it was required to identify the aggravating circumstance it had found, but was not similarly required to do so as to mitigating circumstances, suggesting to the jury that it had broad and unrestricted discretion to consider mitigating circumstances. *Id.* Finally, while the trial court instructed the jury that its ultimate conclusion (as to the defendant's sentence) must be unanimous, this did not indicate to the jury that each step in its deliberative

19

process also required unanimity.  *Id.*

### 2. *Frey*

Next, in *Frey v. Fulcomer*, 132 F.3d 916 (3d Cir. 1997) – like *Zettlemoyer*, also involving a *habeas* petition filed before AEDPA became effective – we again considered a *Mills* challenge to a similar jury instruction.  The trial court in *Frey* charged:

> Members of the jury, you must now decide whether this defendant should be sentenced to death or life imprisonment.  The sentence will depend upon your findings concerning aggravating and mitigating circumstances.  The Crimes Code provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances.  The verdict must be a sentence of life imprisonment in all other cases.
> . . .
> Remember that your verdict must be a sentence of death if you unanimously find at least one aggravating circumstances (sic) and no mitigating circumstances, or if you unanimously find one or more aggravating circumstances which outweigh any mitigating circumstances.  In all other cases, your verdict must be a sentence of life imprisonment.

*Id.* at 922.

*Frey* determined it was reasonably likely that the jury could have understood this charge to require unanimity in the consideration of mitigating evidence.[7]  "First and foremost, read in its entirety, the relevant portion of the jury charge emphasizes the importance of a unanimous finding, using the phrase frequently and in close proximity to

---

[7]In *Frey*, as in *Zettlemoyer*, the jury imposed a death sentence after finding that one or more aggravating circumstances outweighed any mitigating circumstances.  *See Commonwealth v. Frey*, 554 A.2d 27, 31 n.2 (Pa. 1989) (reproducing completed verdict slip).

20

– within seven words – the mitigating circumstances clause." *Id.* at 923. The Court found particularly relevant the clause "if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance . . . ." *Id.* "Considering this close proximity – the clause is, to the ear and to the mind, one sound bite – it is quite possible that a juror would, regardless of other qualifying language, believe that mitigating circumstances had to be found unanimously." *Id.*

Moreover, the Court noted that its conclusion in *Frey* was not inconsistent with its holding in *Zettlemoyer*. The separation in *Zettlemoyer* between the clauses emphasizing unanimity and mitigating circumstances was seventeen words, "not one sound bite." *Id.* Also, the *Zettlemoyer* trial court had "used the term 'unanimously' to modify only the term 'agree' in the subsequent phrase 'agree and find.'" *Id.* The *Frey* trial court "did not instruct the jury to 'fix the penalty at death if you *unanimously agree and find* . . . ,' but rather instructed them to so fix that sentence 'if the jury *unanimously finds*.'" *Id.* (emphases in text). Thus, "the unanimity language in the *Frey* charge could only modify the term 'find,' and hence the jury could reasonably have believed that unanimity was required in *both* its ultimate and interim conclusions, especially given the close proximity we have described." *Id.* (emphasis added). Finally, unlike in *Zettlemoyer*, the *Frey* trial court "did not stress that the different burdens that attach to aggravating and mitigating circumstances also entail different unanimity requirements," meaning a lay jury plausibly may have concluded that the same unanimity requirements extended to both. *Id.* at 924.

21

For these reasons, the Court found that "it was reasonably likely that the jury *could have*

*believed* that it was required to find the existence of mitigating circumstances

unanimously before those circumstances could be considered in its deliberations," *id.*

(emphasis added), and that the charge therefore violated *Mills*.[8]

### 3. *Banks*

Lastly, we recently analyzed a *Mills* claim under the more stringent AEDPA

standard of review in *Banks v. Horn*, 271 F.3d 527 (3d Cir.) (*Banks I*), *rev'd in part*, 536

U.S. 266 (2002) (*Banks II*), *aff'd on reh'g*, 316 F.3d 228 (3d Cir. 2003) (*Banks III*), *rev'd*

*in part sub nom.*, *Beard v. Banks*, No. 02-1603, 2004 WL 1402567 (June 24, 2004)

(*Banks IV*).[9]  The *Banks I* Court phrased the question presented by the petitioner's *Mills*

---

[8]The Court also noted that the verdict form in *Frey* was "substantially the same" as in *Zettlemoyer*.  *Id.*  However, the text of the charges in the two cases differed significantly. "Since *Zettlemoyer* considered the verdict form and the court's instructions as a whole in reaching its decision, *see Zettlemoyer*, 923 F.2d at 308 n.22, and since the charge here was significantly different, the discussion in *Zettlemoyer* regarding the propriety of the verdict slip is not controlling."  *Id.*

[9]Our decision in *Banks I* granted the petitioner *habeas* relief after concluding that the Pennsylvania Supreme Court had unreasonably applied federal law in evaluating the petitioner's *Mills* claim.  271 F.3d at 543-551.  In so doing, our Court found it unnecessary to evaluate whether *Mills* applies retroactively to cases on *habeas* review per *Teague v. Lane*, 489 U.S. 288 (1989), because the Pennsylvania Supreme Court had not ruled on retroactivity.  *Banks I*, 271 F.3d at 541-43.

The United States Supreme Court in a *per curiam* opinion reversed the panel's determination that a *Teague* analysis was unnecessary.  *Banks II*, 536 U.S. at 267.  In so doing, however, the Supreme Court stated that it did not reach the petitioner's argument that our Court erred by concluding that the Pennsylvania Supreme Court's decision was unreasonable under *Mills*.  *Id.* at 271.  On remand, our Court reaffirmed its prior analysis of the petitioner's *Mills* claim, stating:

claim as "whether the Pennsylvania Supreme Court determination regarding the constitutionality of the instructions, verdict slip, and polling of the jury involved an unreasonable application of *Mills*." 271 F.3d at 544.[10]  The Court answered this question in the affirmative, concluding that the Pennsylvania Supreme Court erred by ruling there was no *Mills* violation without applying the teachings of *Mills*, and by examining the state statute from which the instructions were derived instead of looking for potential confusion by jurors applying those instructions.  *Id.* at 545.

The *Banks* trial court delivered to the jurors the following instructions:

> Our previous ruling in this case was reversed by the Supreme Court only insofar as we held it unnecessary to decide whether *Mills* had retroactive application.  Because we now hold that our application of *Mills* on habeas review of Banks's sentence was not prohibited by *Teague*, we do not disturb the remainder of our previous opinion, including its discussion and holding with regard to the merits of Banks's *Mills* claim.  We merely augment that opinion by essentially replacing its discussion of the *Teague* issue with the analysis here.  Accordingly, our judgment requiring a new penalty phase for Banks will remain unchanged.

*Banks III*, 316 F.3d at 247.  With the Supreme Court overturning our conclusion in *Banks III* as to the retroactivity of *Mills*, *Banks IV*, 2004 WL 1402567, at *11 (concluding that *Mills* cannot be applied retroactively because it "announced a new rule of criminal procedure that falls within neither *Teague* exception"), our holding in *Banks I* as to the petitioner's *Mills* claim is no longer precedential, as *Mills* no longer applies.  Nonetheless, the discussion in *Banks I* on *Mills* is instructive and relevant to our current inquiry.

[10]The *Banks I* Court moved directly to AEDPA's second, "unreasonable application of" clause, bypassing any analysis of whether the state court decision was "contrary to" federal law.  The panel explained that "Banks argues that, in fact, the determination was 'contrary to' *Mills*, because it violated *Mills'* dictates.  We think the better analysis, since the Pennsylvania Supreme Court referenced *Mills* and seemed to be considering how it impacted the Banks case, is to rely on the 'unreasonable application,' which, in any event, is clearly evident."  *Id.* at 545 n.21.

23

Members of the jury, you must now decide whether the defendant in this case is to be sentenced to death or to life imprisonment on each of the Informations upon which you have returned a verdict of guilty of murder in the first degree.

The sentence you will impose will depend on your findings concerning aggravating and mitigating circumstances. The Crime [sic] Code in this Commonwealth provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstance or circumstances.

Remember, under the law of this Commonwealth, your verdict must be a sentence of death if you unanimously find at least one aggravating circumstance and no mitigating circumstance, or if you unanimously find one or more aggravating circumstances which then outweigh any mitigating circumstances.

In all other cases, your verdict would be life imprisonment.

Once again, the Commonwealth has the burden of proving aggravating circumstances beyond a reasonable doubt. The defendant has the burden of proving mitigating circumstances by a preponderance of the evidence.

If, after conscientious and thorough deliberations, you are unable to agree on your findings and your verdict, you should report that to me.

*Id.* at 546-47.

*Banks I* juxtaposed these jury instructions against those our Court found to be constitutionally defective in *Frey*. Because *Frey* was a pre-AEDPA decision, it did not control the holding in *Banks I*, but "nonetheless our reasoning there regarding the *Mills* implications of a very similar jury charge is instructive and applicable." *Id.* at 544, 547. After quoting extended portions of *Frey*, *Banks I* concluded that "[t]hese same concerns dictate the same result here." *Id.* at 548. Our Court determined that the jury instructions

24

in *Banks*, like those in *Frey*, violated *Mills*, and the Pennsylvania Supreme Court's examination (and approval) of the instruction was therefore an unreasonable application of *Mills*. Most significantly, the instructions were ambiguous as to whether unanimity was required to consider mitigating evidence, and the trial court's explanation of the distinctions between the burdens of proof for aggravating and mitigating circumstances also failed to clarify the distinctions between the unanimity requirement for either set of circumstances. *Id.* at 548-49.

*Banks I* next reviewed the verdict slip and concluded that it also suggested to the jury a unanimity requirement as to mitigating circumstances. This form, as completed by the jury, was as follows:

1. We the jury unanimously sentence the defendant in the above matter to

    _X_ Death

    ___ Life Imprisonment

2. (To be completed if the Sentence is Death) We the jury have found unanimously

___ At least one aggravating circumstance and no mitigating circumstances. The aggravated circumstance(s) (is)(are):

1. ___ In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense.

2. ___ The defendant has a significant history of felony convictions involving the use or threat of violence to the person.

3. ___ The defendant has been convicted of another federal or state offense, committed either before or at the time of the offense at issue, for which a

25

sentence of life imprisonment or death was imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense.

*Or*

_X_ One or more aggravating circumstances which outweigh any mitigating circumstance or circumstances.

The aggravating circumstance(s) (is)(are):

1. ___ In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense.

2. ___ The defendant has a significant history of felony convictions involving the use of [sic] threat of violence to the person.

3. _X_ The defendant has been convicted of another federal or state offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense.

The mitigating circumstance(s) (is)(are):

1. _X_ The defendant was under the influence of extreme mental or emotional disturbance.

2. ___ The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

3. ___ Any other mitigating matter concerning the character or record of the defendant or the circumstances of his offense.

*Id.* at 549-50.

*Banks I* found "it only reasonable to conclude that the form itself is at least confusing, and more likely suggestive, regarding the need for unanimity as to mitigating

26

circumstances." *Id.* at 550. The statement that explains the jury's reasoning for imposing a sentence of death – "We the jury have found unanimously . . . ." – implies that everything that follows was found unanimously, including "[o]ne or more aggravating circumstances which outweigh any mitigating circumstance or circumstances." *Id.* No additional language explains the distinctions between the unanimity requirements for aggravating and mitigating circumstances, and nowhere does the form instruct that the jury could infer that a mitigating circumstance might be marked if only one juror found that the circumstance existed. *Id.* For these reasons, the verdict slip also violated *Mills*, and "for the Pennsylvania Supreme Court to have ruled that there was no *Mills* violation without an examination of the content and implications of the verdict slip and without employing the proper inquiry was an unreasonable application of *Mills*."[11] *Id.*

## C. The *Hackett* Charge

Following the lead of *Zettlemoyer*, *Frey*, and *Banks*, we begin by setting out the trial court's instructions to the jury in Hackett's case:

> The sentence will depend upon your findings concerning aggravating or mitigating circumstances. The Crimes Code provides that a verdict must be the sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstance [sic] which outweigh any mitigating circumstances that you may determine. The verdict must be a sentence of life imprisonment in all other cases.

---

[11]*Banks I* also briefly examined the jury poll, but concluded that "the polling does not appear either to add to or reduce the confusion as to the *Mills* problems we have already identified in the penalty phase instructions and verdict slip." *Id.* at 551.

27

The Crimes Code defines aggravating and mitigating circumstances. For the purposes confronting you at this time in this case, only the following matters, if proven, can constitute aggravating circumstances.

Now, ladies and gentlemen, I digress for a moment. Some of these may have no application, but I'm going to give them all to you. You will then have to make a determination as to whether, in your view, they apply or not.

[lists possible aggravating circumstances]

I am a bit repetitious. You may note, some of those don't have any application to this matter, but I'm giving them all to you. It is your determination to find as you must or not, as you see it, whether any of the things I've just read constitute aggravating circumstances, as it applies to this case and these defendants.

For the purpose or purposes of this case, the following matters, if proven, can constitute mitigating circumstances: [lists possible mitigating circumstances]

Next. The Commonwealth has the burden of proving aggravating circumstances beyond a reasonable doubt. As you will recall, I defined that term for you. The defendant has the burden of proving mitigating circumstances, but only by a preponderance of the evidence. This is a lesser burden of proof than beyond a reasonable doubt. A preponderance of the evidence exists where one side is more believable than the other side.

All the evidence from both sides, including the evidence you heard earlier during the trial in chief, as to aggravating or mitigating circumstances is important and proper for you to consider. You should not decide out of any feelings of vengeance or prejudice toward the defendants acting as I've heretofore said.

* * * * * *

Now, the verdict is for you, ladies and gentlemen of the jury. Remember and consider all of the evidence, giving it the weight to which you determine it to be entitled, remembering that you are not merely recommending a punishment. The verdict you return will actually fix the punishment at death or life imprisonment.

28

Remember again that your verdict must be unanimous. All twelve of you must agree. Please note, it therefore cannot be reached by a majority vote or by a percentage. It must be the verdict of each and every one of you.

Remember that your verdict must be a sentence of death if you unanimously find at least one aggravating circumstance and no mitigating circumstance, or if you unanimously find one or more aggravating circumstances which outweigh any mitigating circumstances. In all other cases, your verdict must be a sentence of life imprisonment.

You will be given a verdict slip, which you will refer to, . . . upon which to record your verdict and findings. You will follow the directions on the verdict slip and do whatever is required.

Ladies and gentlemen, finally, after conscientious and thorough deliberation, if you are unable to agree on your findings and verdict, you should report to me. If in my opinion further deliberations will not result in a unanimous agreement on the sentence, whichever it may be, it will be my duty to then impose a sentence upon the defendant[] . . . of life imprisonment.

*Hackett*, 212 F. Supp. 2d at 400-01 (footnote omitted). The verdict form, as completed by

Hackett's jury, is as follows:

We, the jury, enpaneled [sic] in the above entitled case, having heretofore determined that the defendant . . . is guilty of murder of the first degree, do hereby find:

AGGRAVATING CIRCUMSTANCE(S)

1.      The victim was a fireman, peace officer or public servant concerned in official detention who was killed in the performance of his duties ( )

2.      The defendant paid or was paid by another person or had contracted to pay or be paid by another person or has conspired to pay or be paid by another person for the killing of the victim (✓)

3.      The victim was being held by the defendant for ransom or reward, or as a shield or hostage ( )

29

4.      The death of the victim occurred while defendant was engaged in the hijacking of an aircraft ( )

5.      The victim was a prosecution witness to a murder or other felony committed by the defendant and was killed for the purpose of preventing his testimony against the defendant in any grand jury or criminal proceeding involving such offenses ( )

6.      The defendant committed a killing while in the perpetration of a felony ( )

7.      In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense (✓)

8.      The offense was committed by means of torture ( )

9.      The defendant has a significant history of felony convictions involving the use or threat of violence to the person ( )

10.     The defendant has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was possible or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense ( )

11.     The defendant has been convicted of another murder, committed either before or at the time of the offense at issue ( )

12.     The defendant has been convicted of voluntary manslaughter, committed either before or at the time of the offense at issue. ( )

MITIGATING CIRCUMSTANCE(S)

a.      The defendant has no significant history of prior criminal convictions ( )

b.      The defendant was under the influence of extreme mental or emotional disturbance ( )

30

c.      The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired ( )

d.      The age of the defendant at the time of the crime ( )

e.      The defendant acted under extreme duress, although not such duress as to constitute a defense to prosecution under Section 309 (Relating to duress), or acted under the substantial domination of another person ( )

f.      The victim was a participant in the defendant's homicidal conduct or consented to the homicidal acts ( )

g.      The defendant's participation in the homicidal act was relatively minor ( )

h.      Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense ( )

We, the jury, have found unanimously

[✓]    at least one aggravating circumstance and no mitigating circumstance. The aggravating circumstance(s) ~~(is)~~ (are) ___#2 and #7___

[ ]    one or more aggravating circumstances which outweigh any mitigating circumstances.  The aggravating circumstance(s) (is) (are) _____

We, the jury, unanimously render the following sentencing verdict:

DEATH                          (✓)

LIFE IMPRISONMENT    ( )

App. at 98-100.  The verdict form was signed by all twelve jurors.  *Id.* at 100.

## D.  AEDPA "Contrary To" Analysis

Our first task under AEDPA is to inquire whether the decision of the Pennsylvania

31

Supreme Court was contrary to United States Supreme Court precedent. *See Werts*, 228 F.3d at 196-97. The District Court held that it was, primarily because "[t]he state court failed to cite, apply, or otherwise refer to the *Boyde* standard." *Hackett*, 212 F. Supp. 2d at 404. The Pennsylvania Supreme Court did analyze Hackett's claim under *Mills*, but did so improperly, the District Court concluded, because it focused on the constitutionality of the state sentencing statute rather than on the issue of jury confusion, relied solely on prior state court cases (none of which applied *Boyde* either), and failed to consider the jury instructions in the context of the entire proceeding. *Id.* at 404-06.

We agree with the District Court that the Pennsylvania Supreme Court's treatment of Hackett's *Mills* claim was not comprehensive. Indeed, the sum total of its discussion on this issue was as follows:

> Hackett next argues that the trial court erred in its charge to the jury during the penalty phase by failing to instruct the jury they need not be unanimous in finding mitigating circumstances in accord with *Mills v. Maryland*, 486 U.S. 367 (1988). *Mills* concerned a Maryland statute which required jurors unanimously to agree on each individual mitigating circumstance after deciding aggravating factors. Absent unanimous agreement, the Maryland statute barred consideration of the mitigating evidence as to a given circumstance. The Supreme Court held that the statute violated the Eighth Amendment because a single Maryland juror could force a death verdict on the other jurors by refusing to agree that mitigation existed.
>
> The Pennsylvania statute, 42 Pa.C.S. § 9711, does the opposite and, therefore, does not violate the rule in *Mills*. The Pennsylvania statute, 42 Pa.C.S. § 9711(c)(1)(iv), requires that the jury unanimously agree that *no* mitigating circumstances exist and unanimously agree on a verdict for a sentence of death. Thus, while a single Pennsylvania juror can always *prevent* a death sentence, a single juror can never *compel* one, as could a single juror under the former Maryland statute. Jury instructions in the penalty phase which follow

the language of the death penalty statute do not recreate the error in *Mills*. *Commonwealth v. Tilley*, 595 A.2d 575 (1991); *Commonwealth v. Williams*, 570 A.2d 75 (1990); *Commonwealth v. O'Shea*, 567 A.2d 1023 (1989), *cert. denied*, 498 U.S. 881 (1990); *Commonwealth v. Frey*, 554 A.2d 27 (1989).

Here, the trial court's instructions exactly followed the death penalty statute, 42 Pa.C.S. § 9711.[12]  Indeed, Hackett concedes that the lower court "recited the language of the statute."  The trial court did not err by following the statutory language.

*Commonwealth v. Hackett*, 627 A.2d at 725 (internal footnote omitted) (emphasis in text).

Although cursory, the Pennsylvania Supreme Court's decision was not contrary to Supreme Court precedent for the purpose of granting *habeas* relief under AEDPA.  As the Supreme Court explained in *Williams*, "[t]he word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). Thus, "[a] state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.*  The Pennsylvania Supreme Court applied *Mills*, but did not apply *Boyde*. Its analysis thus was incomplete, as *Boyde* is the governing standard of review for *Mills* claims of juror confusion.  But it does not follow that the state court decision also was contrary to Supreme Court precedent.  This is because *Boyde* clarifies *Mills*, but does not

---

[12]The Pennsylvania Supreme Court stated here in a footnote: "Hackett argues that his claim is unique in that he does not question the constitutionality of the statute itself, but only the instructions given by the trial court.  Since the trial court here followed the language of the statute, word for word in its instruction, this is hardly a distinction." *Commonwealth v. Hackett*, 627 A.2d at 725 n.6.

33

contradict it.

*Mills* required, among other formulations, a petitioner to show a "substantial probability"[13] of juror confusion, whereas *Boyde* clarified that standard to require a "reasonable likelihood" of the same.  In any event, analyzing a *Mills* claim under *Mills* alone (*i.e.*, instead of under *Boyde*) does not raise the bar for a petitioner to obtain relief.

If the Pennsylvania Supreme Court denied Hackett relief under *Mills*, it logically would have done the same if applying *Boyde*.  A petitioner unable to demonstrate a substantial probability of juror confusion cannot show a reasonable likelihood of as much.  Thus, the absence of a *Boyde* analysis did not "*result[] in a decision* that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C. 2254(d)(1) (emphasis added).  Put another way, had the Pennsylvania Supreme Court applied *Boyde*, it would have arrived at the same result.  For this reason, we disagree with the District Court and conclude that Hackett's claim is more appropriately reviewed under § 2254(d)(1)'s second, "unreasonable application of" standard.  *Cf. Banks I*, 271 F.3d at 545 n.21 ("We think the better analysis, since the Pennsylvania Supreme Court referenced *Mills* and seemed to be considering how it impacted the Banks case, is to rely on the 'unreasonable application' [standard] . . . .").

---

[13]"Probability" should be understood as the "relative frequency of the occurrence of an event based on the ratio between its occurrence and the total average number of cases necessary to ensure its occurrence...[,as] when a die is rolled, the [probability] that ...[x] will be thrown is 1 out of 6."  Webster's Third New International Dictionary, at 1806 (1971).  In this context, "probability" connotes odds or tendency, not whether an outcome is more probable than not.  *See generally supra* Part III.A.3.

## E. AEDPA "Unreasonable Application Of" Analysis

In determining "whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent," *Werts*, 228 F.3d at 197, we note at the outset the emphasis in our prior opinions that we are to focus on the charge delivered to the jury and the language in the verdict form as a whole, *Frey*, 132 F.3d at 924; *Zettlemoyer*, 923 F.2d at 308-09 n.22, and not the jury's result. *Banks I*, 271 F.3d at 547 (quoting *Frey*, 132 F.3d at 923). The reason that we need not determine whether the jurors actually misunderstood the trial court's instructions and verdict form is that, in many instances, it would be quite difficult to do so. *Cf. Mills*, 486 U.S. at 381.

The completed verdict forms in *Zettlemoyer*, *Frey*, and *Banks* indicate that the jury in each case imposed a death sentence after finding unanimously that the aggravating circumstances outweighed the mitigating circumstances. *Zettlemoyer*, 923 F.2d at 308 ("We the jury have found unanimously . . . the aggravating circumstance outweighs [the] mitigating circumstances."); *Commonwealth v. Frey*, 554 A.2d at 31 n.2 ("We the jury have found unanimously . . . [o]ne or more aggravating circumstances which outweigh any mitigating circumstances."); *Banks I*, 271 F.3d at 549-50 ("We the jury have found unanimously . . . [o]ne or more aggravating circumstances which outweigh any mitigating circumstance or circumstances."). In all three cases, the jury found at least some mitigating evidence. What we cannot know, however, is the precise extent to which the jurors properly considered the evidence of mitigating circumstances when weighing that

35

evidence against the aggravating circumstances. Some measure of uncertainty is unavoidable when the jury weighs mitigating circumstances against aggravating circumstances but reveals only the result of its efforts. In other words, the opaque nature of the jury's deliberative process limits our review primarily to the trial court's instructions and the verdict form to determine whether it is reasonably likely the jury understood the charge to require unanimity in finding mitigating evidence exists.

But this case is different, for the jury's verdict form demonstrates unequivocally that there is no reasonable likelihood that the jurors applied the challenged instruction in a way that prevented the consideration of constitutionally relevant evidence. Hackett's jury "found unanimously at least one aggravating circumstance and *no mitigating circumstance*" (emphasis added). We do not conclude there was a *Mills-Boyde* violation here, as no juror found that there was any mitigating circumstance.

This result is logically unavoidable. When the jury found unanimously that there was no mitigating circumstance, it left no room to speculate that perhaps one juror was confused about unanimity requirements and therefore precluded from considering mitigating evidence. After all, if even a single juror thought that there was any mitigating circumstance, then that juror could not join a verdict in which the jury "found unanimously" that there was "no mitigating circumstance." The finding of no mitigating circumstance – versus when a mitigating circumstance was outweighed by aggravating circumstances – distinguishes Hackett's case from *Zettlemoyer*, *Frey*, and *Banks*, all of

36

which were "weighing" cases.[14]

---

[14]As in *Zettlemoyer* and *Frey*, we acknowledge that the Supreme Court in *Mills* noted that the Maryland Court of Appeals, subsequent to the defendant's sentencing, promulgated a new findings and sentencing form. *Zettlemoyer*, 923 F.3d at 308 n.22 (citing *Mills*, 486 U.S. at 381-83); *Frey*, 132 F.3d at 924 (same). As noted by the Supreme Court:

> Although we are hesitant to infer too much about the prior verdict form from the Court of Appeals' well-meant efforts to remove ambiguity from the State's capital sentencing scheme, we cannot avoid noticing these significant changes effected in instructions to the jury. We can and do infer from these changes at least *some* concern on the part of that court that juries could misunderstand the previous instructions as to unanimity and the consideration of mitigating evidence by individual jurors.

*Mills*, 486 U.S. at 382 (emphasis in text).

We further recognize, as did *Zettlemoyer* and *Frey*, that Pennsylvania likewise has revised its uniform verdict slip for capital cases. *Zettlemoyer*, 923 F.3d at 308 (quoting Pa. R. Crim. P. 358A); *Frey*, 132 F.3d at 924 (same). The verdict slip now instructs, in relevant part:

A. We, the jury, unanimously sentence the defendant to (check one):

    ___ Death
    ___ Life Imprisonment

B. The findings on which the sentence of death is based are (check one):

    ___ 1. At least one aggravating circumstance and no mitigating circumstance.

    The aggravating circumstance(s) *unanimously found* (is) (are): _____

    ___ 2. One or more aggravating circumstances which outweigh(s) any mitigating circumstance(s).

    The aggravating circumstance(s) *unanimously found* (is) (are): _____

Our dissenting colleague points out that, like this case, *Mills* was not a "weighing" case. There is, however, an important difference between the two. The jury verdict form in *Mills* required jurors to find unanimously the *presence* of mitigating circumstances. See 486 U.S. at 387 ("Based upon the evidence we unanimously find that each of the following mitigating circumstances which is marked 'yes' has been proven to exist by a preponderance of the evidence . . . ."). That is not our case, where juror unanimity was on the *absence* of mitigating circumstances. "Such a requirement . . . enhances the reliability of the jury's decision without any risk that a single holdout juror may impose a sentence against the views of the other 11." *McKoy,* 494 U.S. at 455 n.1 (Kennedy, J., concurring).

The Supreme Court in *Mills* stated its conclusion succinctly: "Under our cases, the sentencer must be permitted to consider all mitigating evidence. The possibility that a single juror could block such consideration, and consequently require the jury to impose the death penalty, is one we dare not risk." 486 U.S. at 384. We recognized as much in *Frey*, where then Chief Judge Becker wrote: "In sum, the essential holding of *Mills-*

---

The mitigating circumstance(s) *found by one or more of us* (is) (are): _____

Pa. R. Crim. P. 807 (emphases added).

While we too are hesitant to infer too much from these revisions, we believe it is at least relevant that the wording on the verdict slip as to mitigating circumstances in "weighing" cases was altered significantly (to emphasize that mitigating circumstances may be found by only one or more jurors), whereas no similar change was made to the verdict form to strengthen the directive that a jury's finding of no mitigating circumstance must be unanimous.

38

*McKoy* is simply that one juror cannot prevent the others from giving effect to mitigating evidence, regardless of whether the imposition of a life sentence depends on the existence of such evidence." 132 F.3d at 921. The Pennsylvania Supreme Court, however, did not fail to heed *Mills*'s admonition when it denied Hackett's direct appeal – four years before *Frey* had been decided by our Court – on the ground that Pennsylvania's capital sentencing scheme

> requires that the jury unanimously agree that *no* mitigating circumstances exist and unanimously agree on a verdict for a sentence of death. Thus, while a single Pennsylvania juror can always *prevent* a death sentence, a single juror can never *compel* one, as could a single juror under the former Maryland statute.

*Commonwealth v. Hackett*, 627 A.2d at 725 (emphases in text). The Pennsylvania Supreme Court is correct, for if even only one juror had found any mitigating circumstance the jury could have imposed a death sentence only if it found unanimously that there was one or more aggravating circumstances that outweighed any mitigating circumstances. Plainly the jury could not have imposed the sentence that it did – death, after unanimously finding aggravating circumstances and no mitigating circumstance – if even a single juror was unwilling to join in the verdict.

A "state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. The Pennsylvania Supreme Court identified *Mills* as the

39

correct governing legal rule under which to analyze Hackett's claim of juror confusion.

That Court's application of *Mills* may have been both cursory and undertaken without the

subsequently clarified standard of review found in *Boyde*, but these factors do not provide

a sufficient basis for granting *habeas* relief. "Under § 2254(d)(1)'s 'unreasonable

application' clause . . . a federal habeas court may not issue the writ simply because that

court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly. Rather, that application must

also be unreasonable." *Williams*, 529 U.S. at 411. The Pennsylvania Supreme Court's

application of *Mills* was reasonable in this case, as a single dissenting juror could have

made impossible the unanimous finding of no mitigating circumstance.[15]

## F.  Conclusion

We hold there is no reasonable likelihood the jury in Hackett's case applied the

challenged instruction and verdict form in a way that prevented the consideration of

constitutionally relevant evidence. We conclude as much because the jury unanimously

found no mitigating circumstance. Because the jury found no mitigating circumstance, it

---

[15]Though our analysis focuses, as it must, on the jury instructions and verdict form, we note in passing that the comparative verdicts in the four defendants' joint trials support that the jury in this case was not confused. For Hackett, the jury unanimously found no mitigating circumstance while unanimously finding two aggravating circumstances. As to the other defendants, one was sentenced to death because the aggravating circumstances outweighed the mitigating circumstance, and two were sentenced to life imprisonment because the jury either found no aggravating circumstance or found one or more aggravating circumstances that were outweighed by one or more mitigating circumstances.

did not proceed to determine whether any mitigating circumstance outweighed the aggravating circumstances it unanimously found, as did the juries in *Zettlemoyer*, *Frey*, and *Banks*. Accordingly, those decisions are distinguishable from this case. Even under pre-AEDPA review Hackett would not have been entitled to federal *habeas* relief. Inasmuch as after AEDPA's enactment the federal courts' deference to state courts has been enhanced, there is even less reason to grant Hackett's petition. We therefore reverse the judgment of the District Court with instructions to vacate its order granting the petition for writ of *habeas corpus* and instead enter an order denying the petition.

*Hackett v. Price*, No. 01-9008

Becker, *Circuit Judge*, dissenting:

The majority rejects Richard Hackett's habeas petition by concluding that the state court did not reach a result that was contrary to, or an unreasonable application of, the Eighth Amendment rule expressed in <u>Mills v. Maryland</u>, 486 U.S. 367 (1988). The majority makes no showing, however, that the instructions and verdict slip in this case were at all different from, or any less confusing than, the instructions and verdict slips which led this Court to grant relief under <u>Mills</u> in <u>Banks v. Horn</u>, 271 F.3d 527 (3d Cir. 2002), and <u>Frey v. Fulcomer</u>, 132 F.3d 916 (3d Cir. 1997). Instead, the majority justifies its result on the sole ground that Hackett's jury unanimously found "no mitigating circumstance." The majority infers from this finding that Hackett's jury must not have

41

been confused by the instructions and verdict slip with regard to its role in finding mitigating circumstances. Like the able District Judge who granted Hackett's petition, I find this analysis unconvincing.

In <u>Banks</u>, this Court granted relief under AEDPA upon concluding that essentially the same instructions and verdict slip made it likely a jury would believe that it could not consider mitigating evidence unless the whole jury was unanimous as to the existence of a particular mitigating factor.[16] The majority tries to evade <u>Banks</u> by noting that Hackett's jury found "no mitigating circumstance," whereas in <u>Banks</u> (and in <u>Frey</u>) the jury found at least one mitigating circumstance and reached the weighing stage. In my view, this distinction between the cases is immaterial. The trial court never explained what it meant to "unanimously" find "no mitigating circumstance," and its instructions, as we have held in <u>Banks</u> and <u>Frey</u>, were reasonably likely to lead a jury to believe that unanimity was required before it could even consider a mitigating factor. Thus, contrary to the

---

[16] As the majority notes, our decision in <u>Banks</u> to grant relief under <u>Mills</u> is no longer precedential given the Supreme Court's holding in <u>Beard v. Banks</u>, 124 S. Ct. 2504 (2004), that the <u>Mills</u> rule is barred under <u>Teague v. Lane</u>, 489 U.S. 288 (1989), from retroactive application. <u>See</u> Maj. Op. at 22 n.9. Hackett's conviction became final after <u>Mills</u> was decided, and thus there is no <u>Teague</u> problem here. The majority correctly observes that our discussion in <u>Banks</u> regarding the <u>Mills</u> issue, although not precedential, is nevertheless "instructive and relevant to our current inquiry," Maj. Op. at 22 n.9, particularly given that the analysis in <u>Banks</u> reflects the unanimous judgment of three members of this Court in granting relief on a <u>Mills</u> issue that is, I submit, indistinguishable from the one presented here. It also bears mention that Justice Stevens, joined by Justices Souter, Ginsburg, and Breyer, filed a dissent in <u>Beard v. Banks</u> in which he noted that the four dissenters would have affirmed the grant of habeas relief on the <u>Mills</u> question in <u>Banks</u> "[f]or the reasons identified by the Third Circuit[.]" 124 S. Ct. at 2517 (Stevens, J., dissenting).

majority's suggestion that each juror in Hackett's case must have considered and rejected all mitigating evidence, the record more accurately reflects that this jury likely was unanimous only in finding that there was "no mitigating circumstance" upon which all jurors could agree.

Such an understanding of its instructions and verdict slip violated Hackett's rights under the Eighth Amendment, as individual jurors were prevented from considering a mitigating factor, and possibly voting for a lesser sentence, absent the agreement of all jurors as to the presence of that factor. Put another way, a single juror, insisting Hackett failed to prove any mitigating circumstance by a preponderance of the evidence, could compel the death sentence despite other jurors who felt mitigating evidence was proven and sufficient to warrant a life sentence. This is precisely the situation that the Mills rule seeks to prevent. Indeed, the majority observes only in passing that Mills itself was a case in which the jury found no mitigating circumstance and the Supreme Court vacated the sentence due to the likelihood that the jury thought it was precluded from considering mitigating evidence absent unanimity. See Mills, 486 U.S. at 370, 384.

In short, there is a reasonable likelihood, under the standard of Boyde v. California, 494 U.S. 370 (1990), that Hackett's jury understood its instructions in a manner that violated Mills. Because the Pennsylvania Supreme Court's rejection of this claim resulted in an unreasonable application of federal law, I respectfully dissent.

**I.**

As a threshold matter, I agree with the majority that the "unreasonable application

of" prong of 28 U.S.C. § 2254(d)(1) appears to provide the best fit for analyzing the

Pennsylvania Supreme Court's decision to reject Hackett's <u>Mills</u> claim.[17]  An AEDPA

---

[17] I do not concede, however, that the Pennsylvania Supreme Court's decision is necessarily immune from analysis under the "contrary to" test, or that its decision would survive such scrutiny.  As Justice O'Connor explained for the majority in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), "[a] state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  529 U.S. at 405.  Justice O'Connor offered the following example of a "contrary to" application of federal law:

> Take, for example, our decision in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be "diametrically different," "opposite in character or nature," and "mutually opposed" to our clearly established precedent because we held in <u>Strickland</u> that the prisoner need only demonstrate a "reasonable probability that ... the result of the proceeding would have been different."  <u>Id.</u>, at 694.

<u>Williams</u>, 529 U.S. at 405-06.

A similar flaw can be found in the state court analysis here.  The Pennsylvania Supreme Court cited <u>Mills</u> and purported to analyze Hackett's claim under the <u>Mills</u> rule, but the court failed to consider, as is required by <u>Mills</u> and <u>Boyde</u>, whether the jury likely interpreted its instructions and verdict slip in a manner that prevented its consideration of relevant mitigating evidence.  The state court instead reasoned that, because the instructions mirrored the language of 42 Pa. Cons. Stat. § 9711(c)(1)(iv), and because it had previously held that statute constitutional by finding that it does not expressly permit a single juror who refuses to agree that mitigation exists to force a death verdict on the other jurors, there can be no <u>Mills</u> violation.  <u>See</u> <u>Commonwealth v. Hackett</u>, 627 A.2d 719, 725 (Pa. 1993).  This analysis employed a rule (<u>i.e.</u>, no <u>Mills</u> violation if the challenged instructions can be read in a constitutional manner) that did not comport with the governing rule set forth in <u>Mills</u> and <u>Boyde</u> (<u>i.e.</u>, whether there is a reasonable

44

merits analysis of the <u>Mills</u> claim must begin, of course, with a review of the Supreme

likelihood that the jury applied the challenged instructions in a way that prevented consideration of mitigating evidence). In <u>Mills</u> itself, the state court interpreted its statute as constitutional, but the Supreme Court vacated the state court decision because there was a substantial risk that the jury did not understand that it could consider mitigating evidence absent unanimous agreement. <u>Mills</u>, 486 U.S. at 371, 384.

The majority finds that the state court "applied <u>Mills</u>, but did not apply <u>Boyde</u>," and therefore the state court's analysis was merely "incomplete" but not necessarily contrary to Supreme Court precedent. <u>See</u> Maj. Op. at 33. The majority fails to acknowledge, however, that the Pennsylvania Supreme Court never applied <u>Mills</u> in the sense that it failed to identify the correct rule from <u>Mills</u>, not to mention its failure to apply the <u>Boyde</u> standard. Thus, as in Justice O'Connor's example involving a misapprehension of the <u>Strickland</u> rule, the state court's decision arguably fits the mold of "contrary to" federal law. <u>Cf.</u> <u>Bell v. Cone</u>, 535 U.S. 685, 698 (2002) ("We hold, therefore, that the state court correctly identified the principles announced in <u>Strickland</u> as those governing the analysis of respondent's claim. Consequently, we find no merit in respondent's contention that the state court's adjudication was contrary to our clearly established law."). Moreover, Hackett can show not only that the state court failed to apply the correct <u>Mills</u> rule, but that he is entitled to relief under a correct application of <u>Mills</u> and <u>Boyde</u>. Thus, although I would agree with the majority that " [i]f the Pennsylvania Supreme Court denied Hackett relief under <u>Mills</u>, it logically would have done the same if applying  <u>Boyde</u>," Maj. Op. at 34, the Pennsylvania Supreme Court's failure to apply <u>Mills</u> correctly precludes an inference that it also would have denied relief under the <u>Boyde</u> standard.

In the final analysis, however, this case may fall in the overlap between the "contrary to" and "unreasonable application of" standards, given that the state court assessed and sought to distinguish Hackett's claim by analogy to <u>Mills</u>, despite its failure to conduct a proper <u>Mills</u> inquiry. <u>See</u> <u>Moore v. Morton</u>, 255 F.3d 95, 104 (3d Cir. 2001) (noting that "[i]n <u>Williams v. Taylor</u>, 529 U.S. 362, 404-06 (2000), the Supreme Court held that 'contrary to' and 'unreasonable application of' have independent, if overlapping meanings."). I see no need to explore this "overlap" here. In <u>Banks</u>, we held that the Pennsylvania Supreme Court rendered an unreasonable application of federal law on indistinguishable instructions, and we opted not to analyze the claim under the "contrary to" test. <u>Banks</u>, 271 F.3d at 545 n.21. Because I believe the same approach can be taken here, there is little need to engage in a separate contrary to analysis for Hackett's claim. Moreover, the majority denies relief to Hackett primarily by finding that the state court's decision survives the unreasonable application test. Thus, I too focus upon the unreasonableness standard.

45

Court's clearly established holdings in this area. Fortunately, our task in identifying the controlling law is made easier by the fact that our Court has fully explored the Mills question in the past. For example, in Frey, we summarized the relevant law as follows:

> Under the Supreme Court's current construction of the Eighth Amendment, the sentencer in a death penalty case must be permitted to consider all relevant mitigating evidence that the defendant proffers as counseling less than a sentence of death. Eddings v. Oklahoma, 455 U.S. 104 (1982); Lockett v. Ohio, 438 U.S. 586 (1978). Accordingly, it is well established that the sentencer cannot be precluded from considering any such evidence. Skipper v. South Carolina, 476 U.S. 1 (1986); Eddings, 455 U.S. at 114. The source of this preclusion is irrelevant; whether its source is statutory (Lockett), the sentencing court (Eddings), or an evidentiary ruling (Skipper), the result is the same.

> In Mills, the Supreme Court relied on these precedents to conclude that a death sentence should be vacated if there is a substantial probability that reasonable jurors, upon receiving the judge's instructions and attempting to complete the verdict

46

form based on those instructions, may have thought that they could only consider those mitigating factors which they unanimously found to exist. Put differently, if the jurors were led to believe that they could not each individually consider certain mitigating circumstances because there was not unanimous agreement as to the existence of those circumstances, then "some jurors were prevented from considering factors which may call for a less severe penalty, and petitioner's sentence cannot stand." Id. at 376 (internal citations omitted). See also Zettlemoyer v. Fulcomer, 923 F.2d 284, 306-07 (1991) (discussing Mills).

Frey, 132 F.3d at 920-21.

In Boyde v. California, 494 U.S. 370 (1990), as the majority explains, the Supreme Court clarified that the proper standard for assessing a Mills challenge is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Id. at 380. Thus, as we made clear in Frey, "while our inquiry is directed toward whether the [] instruction suffers from the same type of defect discussed in Mills (i.e. that the instruction could be read to require a unanimous finding of mitigating circumstances), our standard is that of Boyde,

not <u>Mills</u>." <u>Frey</u>, 132 F.3d at 921.

<u>Frey</u> was a pre-AEDPA case in which we found a <u>Mills</u> violation upon review of Pennsylvania jury instructions that mirrored, in all pertinent respects, the instructions at issue here. Cf. <u>Frey</u>, 132 F.3d at 922 ("The Crimes Code provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances.") with <u>Hackett</u>, 212 F. Supp. 2d. at 400-01 ("The Crimes Code provides that a verdict must be the sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstance [sic] which outweigh any mitigating circumstances that you may determined."). The majority understandably makes no attempt to distinguish the language of the <u>Frey</u> instructions from the instructions to Hackett's jury.

We observed in <u>Frey</u> that this instruction "emphasize[d] the importance of a unanimous finding, using the phrase frequently and in close proximity to– within seven words of– the mitigating circumstances clause." 132 F.3d at 923 (quoting the pertinent language as "if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance"). We noted that this "clause is, to the ear and to the mind, one sound bite," <u>id.</u>, and given the use of "unanimously" in close proximity to "mitigating circumstances," we held that, when viewed in the context of the entire charge, "it is quite

48

possible that a juror would, regardless of other qualifying language, believe that mitigating circumstances had to be found unanimously." Id.

In Banks, a post-AEDPA case, we confronted a "very similar charge" to that issued in Frey and held that it, too, ran afoul of Mills. Banks, 271 F.3d at 547-49. The instructions to the jury in Banks provided in relevant part as follows: "The Crime [sic] Code in this Commonwealth provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstance or circumstances." Id. at 546-47. The majority makes no attempt at a distinction between the Banks and Hackett instructions, and I see no basis for one: in both cases, the instructions, viewed in their entirety, were likely understood to require unanimity to consider a mitigating factor.[18]

---

[18] The Commonwealth's only argument in this regard is that Banks was wrongly decided on the Mills question, as it contends that Banks "did not apply the correct evaluative inquiry under Boyde, but rather, consistently and improperly employed possibility-based, and single-juror based, standards of evaluation that Boyde explicitly rejected." Appellant's Br. at 51. The Commonwealth levels a similar charge against Frey. Appellant's Br. at 56-58, 61-62. However, a close review of Banks and Frey shows that this Court did not misapply the Boyde standard. The Court was careful in Frey to note the difference between Mills and Boyde, and we held, in accordance with Boyde, that "it was reasonably likely that the jury could have believed that it was required to find the existence of mitigating circumstances unanimously. . . ." Frey, 132 F.3d at 924. Likewise, we held in Banks that, "[c]onsidered as a whole, the jury instructions leave no doubt 'there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents consideration of constitutionally relevant evidence.'" Banks, 271 F.3d at 549 (quoting Boyde, 494 U.S. at 380).

We concluded in Banks that the state court's rejection of the petitioner's claim resulted in an unreasonable application of federal law. Banks, 271 F.3d at 545. We observed that the state court failed (as it did here) to analyze how the jury might have interpreted its instructions and verdict slip, merely holding that there was no error because the instructions tracked the language of 42 Pa. Cons. Stat. § 9711(c)(1)(iv). We found this determination insufficient because Mills, in conjunction with Boyde, requires a reviewing court to examine the entire charge and ask whether a reasonable jury could have concluded that unanimity was required to find a mitigating circumstance. Id. at 546. In fact, we quoted in Banks the District Court's reasoning in Hackett's case to explain that the Pennsylvania Supreme Court in both cases

> "misconstrue[d] the court's task in examining for Mills error
>
> by focusing on the meaning of the statute rather than on the
>
> issue of jury confusion. As Mills instructs, it is the danger of
>
> jury misinterpretation of the statutory scheme, rather than the
>
> existence of a constitutional interpretation of the statute by the
>
> courts, that creates the Mills problem."

Id. at 544-45 (quoting Hackett v. Price, 212 F. Supp. 2d 382, 404 (E.D. Pa. 2001)).

Moreover, when discussing in Banks the reasons why the state court's decision to reject the Mills claim amounted to an unreasonable application of federal law, we

50

observed that the Pennsylvania Supreme Court's analysis there contained the same flaw as its analysis in Hackett's case. We explained as follows:

> In Hackett, the Pennsylvania Supreme Court had attempted to distinguish Mills based on the Maryland statute, reasoning that since the Maryland statute barred consideration of mitigating evidence unless there was unanimous agreement and the Pennsylvania statute required unanimity as to the absence of a mitigating circumstance, the Pennsylvania statute allowed individual jurors to prevent death sentences but not to compel them. See Hackett, 2001 WL 884721 at *19. The differences in the statutes were not enough to render the Pennsylvania statute constitutional, since the danger of jury misinterpretation was present in both statutes, and the Pennsylvania Supreme Court had examined only the statute, not the possibility that the jury had been confused by the instructions given. Boyde v. California, 494 U.S. 370 (1990), reh'g denied 495 U.S. 924, established that the jury instructions must be considered in the context of the entire proceeding, and the Pennsylvania Supreme Court's failure to do so was contrary to clearly established federal law. Id. at

51

21. Here, the Pennsylvania Supreme Court has essentially ignored the teachings of <u>Boyde</u> and engaged the same reasoning regarding the constitutionality of the instructions as in <u>Hackett</u>– itself constitutionally defective.

<u>Banks</u>, 271 F.3d at 545-46.

## II.

It is against this background that we reach our consideration of the instructions and verdict slip employed in Hackett's case. As noted, the majority does not, and cannot, distinguish <u>Frey</u> and <u>Banks</u> on whether the jury likely understood the instructions here to require unanimity to consider mitigating evidence. Like those earlier cases, the Hackett court used the word "unanimously" in close proximity to "mitigating circumstances," instructing the jury that it must return a death sentence "if you unanimously find at least one aggravating circumstance and no mitigating circumstance." As we explained in <u>Frey</u>, it is likely "a juror would, regardless of other qualifying language, believe that mitigating circumstances had to be found unanimously." <u>Frey</u>, 132 F.3d at 923. The Hackett trial court also repeated the instruction near the end of its charge, thus twice reinforcing the notion that the jury needed unanimity. <u>See</u> Maj. Op. at 28-29. Moreover, as in <u>Banks</u> and <u>Frey</u>, nowhere did the court explain or even hint that unanimity was unnecessary to find a mitigating factor. I note that this flaw in the jury instructions is seemingly remedied by

52

Pennsylvania's current model instructions, quoted in the margin.[19]

The language of the verdict slip is also ambiguous, at best, as to the need for unanimity. The preface to the jury's finding provides, "We, the jury, have found unanimously. . .," following which the jury placed a check to reflect "at least one aggravating circumstance and no mitigating circumstance." In <u>Banks</u>, the corresponding language was identical, <u>see</u> <u>Banks</u>, 271 F.3d at 549, and we held this language "at least confusing, and more likely suggestive, regarding the need for unanimity as to mitigating circumstances." <u>Id.</u> at 550. Moreover, the verdict slip here, as in <u>Banks</u>, had "no additional language that would imply that there is a different standard for aggravating circumstances than there is for mitigating circumstances." <u>Id.</u> "There is also no language anywhere on the form from which the jury could infer that a mitigating circumstance might be marked if only one juror had found that circumstance to exist." <u>Id.</u>

Under <u>Boyde</u>, the issue before us is whether it is reasonably likely Hackett's jury interpreted its instructions and verdict slip to mean that it could find a mitigating circumstance only if all twelve jurors agreed upon its existence. This Court has twice resolved that issue in favor of the habeas petitioner with our holdings in <u>Banks</u> and <u>Frey</u>,

---

[19]

> When voting on the general findings, you are to regard a particular *aggravating* circumstance as present only if you all agree that it is present. On the other hand, each of you is free to regard a particular *mitigating* circumstance as present despite what other jurors may believe.

PA. SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS No. 15.2502H(2) (2000).

53

and there is no basis for a different outcome here. Moreover, our analysis in <u>Banks</u> calls for relief under AEDPA, as we fully explained why the state court's flawed application of <u>Mills</u> is unreasonable under clearly established federal law. <u>See</u> 271 F.3d at 543-551.

The majority, nevertheless, holds that there can be no <u>Mills</u> error because Hackett's jury "unanimously" found "no mitigating circumstance," a finding that the majority believes can mean one, and only one, thing– that each juror considered the mitigating evidence and agreed with all other jurors that no mitigating circumstance was proven, resulting in no <u>Mills</u> error. The record reflects, however, the trial court's lone pertinent instruction on the finding of mitigating evidence was its directive to return a death sentence "if you unanimously find at least one aggravating circumstance and no mitigating circumstance." What did it mean to Hackett's jury to "unanimously" find "no mitigating circumstance"? The majority merely offers its view as to what the instruction "plainly" must have meant, but its analysis fails to comply with the Supreme Court's directive in <u>Boyde</u> that "a single instruction to a jury may not be judged in isolation, but must be viewed in the context of the overall charge." <u>Boyde</u>, 494 U.S. at 378; <u>see also</u> <u>Banks</u>, 271 F.3d at 546 (explaining that "the <u>Boyde</u> standard requires that the court view the instruction in its totality, not examine in isolation a few sentences that reference the Crimes Code."). We must look, therefore, to the full context here rather than offer a facile interpretation of a single instruction viewed in isolation.

As noted, the court's charge on mitigating evidence was at best ambiguous.

54

Indeed, we expressly found in <u>Banks</u> that, based on these instructions, "[t]here is *no way* that a juror would understand that a mitigating circumstance could be considered by less than all jurors." <u>Banks</u>, 271 F.3d at 548 (emphasis added). The Hackett trial court also did not explain that a juror was free to find a mitigating circumstance despite the views of other jurors, and it issued no instruction suggesting that a finding of "no mitigating circumstance" should reflect that each juror had considered and rejected all mitigating evidence individually rather than reflecting that there was no mitigating circumstance of common agreement. The language of the verdict slip was likewise ambiguous, if not suggestive, as to a need for unanimity on mitigating circumstances. The verdict slip also contained no language that would imply that mitigating circumstances were subject to a different standard or that mitigation might be found by only one juror.

Hackett's jury, then, was left to decide whether to check the box reflecting a finding of "at least one aggravating circumstance and no mitigating circumstance" based solely on its understanding that it could find a mitigating circumstance only with the unanimous agreement of all jurors. In this light, it seems far more likely, if not outright certain, that the jury believed itself required to return a death verdict if it unanimously found an aggravating circumstance and unanimously found "no mitigating circumstance" upon which all jurors could agree. As Judge Padova observed:

> With respect to the specific question of whether the clause
>
> requires the unanimous rejection of all mitigating factors, it is

55

simply not clear, in the context in which it was given, whether the instruction means that a death sentence is warranted if the jury unanimously finds at least one aggravating circumstance and unanimously finds that no mitigating circumstances exist (as the [majority] contends), or if the phrase means a death sentence is warranted if the jury unanimously finds at least one aggravating circumstance and finds no unanimously agreed upon mitigating circumstances.

The jury's interpretation of the unanimity requirement as to the rejection of mitigating circumstances would depend on how the jury understood and employed the concept of unanimity. If the jury believed that all jurors would have to agree as to the existence of the same particular mitigating circumstance, then the jury could reach a death verdict even if individual jurors believed mitigating factors existed, so long as all the jurors did not agree as to the existence of a particular mitigating circumstance. Such a jury would meet the requirement of the "no mitigating circumstance" prong on the basis that all the jurors agreed, unanimously, that there

56

was no mitigating circumstance that was commonly agreed upon by all twelve jurors.

. . .

The ambiguity of the language of the sentencing statute, the additional jury instructions, and the verdict form all contribute to the conclusion that it was reasonably likely the jury believed it must find mitigating circumstances unanimously before considering them, and that it could reach a verdict of death under the "no mitigating circumstance" prong even if one or more jurors believed that a mitigating circumstance existed without performing the weighing inquiry.

Hackett, 212 F. Supp. 2d at 411-412.

The District Court was correct that we must infer from the record that this jury acted in accordance with a belief that unanimity was required to find a mitigating factor, and that its finding of "no mitigating circumstance" reflects that erroneous belief. The majority's alternative view is untenable, as it merely assumes, with no record support, that the jury applied its instructions so as not to violate Mills. I find this assumption a troubling basis upon which to affirm a sentence of death.

In addition to ignoring the context of this case, the majority, as noted above, observes only in passing, that the jury in <u>Mills</u> likewise found no mitigating circumstance to exist and imposed a death sentence without reaching the weighing stage. <u>Mills</u>, 486 U.S. at 370. The petitioner in <u>Mills</u> argued that the court's instructions and verdict slip served "to require the imposition of a death sentence if the jury unanimously found an aggravating circumstance, but could not agree unanimously as to the existence of any particular mitigating circumstance." <u>Id.</u> at 371. The petitioner thus claimed that "even if some or all of the jurors were to believe that *some* mitigating circumstance or circumstances were present, unless they could unanimously agree on the existence of the *same* mitigating factor, the sentence necessarily would be death." <u>Id.</u> The Maryland Court of Appeals rejected this claim, concluding, <u>inter alia</u>, that because the instructions and verdict slip expressly required unanimity in the acceptance *or* rejection of a mitigating circumstance, the jury's finding likely reflected (as the majority concludes here) a unanimous determination that a mitigating circumstance did not exist, not a failure to find unanimously the existence of a mitigating circumstance. <u>Id.</u> at 372.

The Supreme Court rejected the Maryland court's conclusion as to what the jury likely understood its task to be. The Court distilled the question before it as follows:

> If the jury understood the verdict form as the Court of
>
> Appeals asserted it should have, then every time it marked
>
> "no" beside a mitigating circumstance it indicated its

58

unanimous conclusion that petitioner had not proved the

relevant facts by a preponderance of the evidence, and thus

the court properly upheld the judgment. On the other hand, if

the jury understood that it should mark "no" when it failed to

agree unanimously that a mitigating circumstance existed,

then some jurors were prevented from considering "factors

which may call for a less severe penalty," Lockett v. Ohio,

438 U.S. at 605, and petitioner's sentence cannot stand.

Mills, 486 U.S. at 376 (footnote omitted).  The Court conceded that the Maryland Court

of Appeals' interpretation of the record was "plausible," but it found, after reviewing the

instructions as a whole and the language of the verdict slip, that it could not reject the

petitioner's interpretation "with any degree of certainty."  Id. at 377.  The Court thus

vacated the sentence because the jurors "well may have thought they were precluded from

considering mitigating evidence unless all 12 jurors agreed in the existence of a particular

such circumstance."  Id. at 384.

    While the language of the instructions in Mills took a different form than those at

issue here, see 486 U.S. at 378-80, the practical effect of the jury's finding of no

mitigation in each case is the same.  As in Mills, the instructions here likely prevented the

jury from considering mitigating evidence absent unanimity, and in both cases the juries

59

found no mitigating factor to exist. Unlike my colleagues, however, the Supreme Court refused to infer from the finding of no mitigation that the jury must have reached a unanimous conclusion that the petitioner failed to prove the relevant facts by a preponderance of the evidence. Such an inference could not be drawn in Mills after a consideration of the context of the jury instructions and verdict slip, and the same is true here. Of course, we cannot verify whether Hackett's jury in fact believed itself precluded from considering mitigating evidence absent unanimity, but we can safely conclude that there is a reasonable likelihood the jury interpreted its task in that manner, and that this death sentence, therefore, cannot stand under Mills.

The majority's attempt to find support for its conclusion in the different sentencing verdicts reached for Hackett's co-defendants rings hollow. The jury acted upon the same instructions in its consideration of the sentencing evidence as to all four defendants. The jury sentenced one defendant (Spence) to death after finding that aggravation outweighed mitigation, but given its instructions and verdict slip, the jury likely reached a unanimous finding as to a mitigating circumstance (in violation of Mills) and thereby reached the weighing stage. This does nothing to diminish the showing of a Mills error as to Hackett. The same can be said for the two co-defendants (Gray and Barrett) who received life sentences– given its instructions, the jury likely was either unanimous in its agreement that the Commonwealth failed to prove an aggravating circumstance, or unanimous as to particular mitigating circumstances and found that those mitigating circumstances

60

outweighed the aggravating circumstances, thereby resulting in life sentences. The different sentences thus do nothing to bolster the majority's speculation that there was no Mills error.

It should be added that Hackett's jury was not without substantial mitigating evidence to consider. The Pennsylvania death penalty statute specifies eight categories of mitigating evidence, and Hackett argued mitigation under five of those categories: "[t]he defendant has no significant history of prior criminal convictions"; "[t]he defendant was under the influence of extreme mental or emotional disturbance"; "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired"; "[t]he age of the defendant at the time of the crime"; and "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." 42 Pa. Cons. Stat. § 9711(e)(1)-(4) and (8).

Hackett was twenty years old at the time of the offense. He had one prior conviction in Montgomery County at age nineteen for conspiracy and four counts of burglary, for which he was sentenced to concurrent terms of ten and one-half to twenty-three months imprisonment. His mother, Bonnie Hackett, testified that her son twice failed the first grade and suffered from severe learning problems that resulted in his attending a special school throughout childhood for the learning and emotionally disabled. She further testified, and documentary evidence reflected, that Hackett was

diagnosed with perception problems and as functioning at a "low average" or "dull normal" range of intelligence based on separate full-scale IQ scores of 80 and 85. She testified that her son began to abuse alcohol around age eighteen. Ann Marie Clay, a long-time neighbor and family friend, also testified to Hackett's childhood difficulties.

Doctor Albert Levitt, a psychologist, testified as to the results of various tests he performed on Hackett before trial. He explained the results as showing "very regressed, immature perception of reality situations, which is a sign of immaturity and possibly illness." App. at 48. Hackett also displayed a low-level of maturity, signs of depression, suicidal problems, an immature view of social relationships, anxiety, and "psychosexual difficulties." Id. at 51-52. Doctor Levitt concluded that Hackett "was limited in terms of coping mechanisms, limited in terms of the way he functions, limited in understanding social relationships. There was a significant degree of psychopathology when I saw him, with a lot of morbid and negative thought processes." Id. at 54.

Doctor Levitt also described the results of the standardized Minnesota Multiphasing Inventory, a computer-graded true/false test. He explained the results as indicating, among other things: "[l]imited interpersonal resources"; "[h]igh clinical depression, which means that his depression has reached pathological limits"; "[p]rojective of blame and hostility"; "[p]aranoid features"; "[l]ook[s] for delusions of persecution and maltreatment"; "[m]ay have a thought disorder[, which] would be schizophrenia"; and"[h]yperactive and agitated." Id. at 55-56. Doctor Levitt found these

62

results consistent with his own finding that "the clinical impression was schizoaffective disorder and major depression." Id. at 56. He opined that Hackett "is an emotionally disturbed individual, especially when he has to interact in social situations," and that if "he has to interact socially, he tends to get anxious, confused and develops all kinds of distorted ideations." Id. at 57. Doctor Levitt added that "[a]lcohol would have a significant effect" on Hackett because "[h]is perceptions of reality are not good in the first place, and alcohol would cause all these things to become more distorted." Id. at 59.

The likelihood that Hackett's jury misunderstood its task, resulting as it did in the inability of individual jurors to consider the evidence in mitigation and possibly impose a lesser sentence, poses precisely the type of Eighth Amendment problem that the Mills rule seeks to eliminate. I again refer to Judge Padova's thoughtful analysis:

> Consider, for example, the following scenario. All twelve jurors agree that a particular aggravating factor exists. Two of the jurors conclude that age is a mitigating factor in the case; however, the other ten jurors do not agree. None of the jurors believe that any other mitigating factors exist, and so the jury is not unanimous as to the existence of the individual mitigating factor. Believing that unanimity is required in order to find that a mitigating factor exists, the jurors "find" one aggravating factor, and fail to find any commonly agreed

upon mitigating factors. Rather than moving on to the weighing prong and determining if the aggravating circumstance outweighs the mitigating factor, the jury uses its findings and renders a verdict of death on the basis that the jury unanimously agreed to the existence of "at least one aggravating circumstance" and that the jury unanimously agreed that there was "no mitigating circumstance" that was commonly agreed upon by all twelve jurors. Notwithstanding the fact that two of the jurors believed that a mitigating factor existed, because of the jury's erroneous interpretation of the instructions with respect to the requirement of unanimity, the result would be a sentence of death.

This scenario even creates the possibility of a death verdict under the "no mitigating circumstance" prong where all twelve jurors believe a mitigating factor to exist, but there is no agreement as to the particular factor. For example, two jurors could believe age is a mitigating factor and the other ten jurors could believe the defendant's lack of significant criminal history is a mitigating factor. All twelve jurors thus

believe that a mitigating factor exists, but because they do not

all agree as to the same particular mitigating factor, they

conclude that there are no commonly agreed upon mitigating

factors. Based on their findings, the jurors thus conclude,

unanimously, that there are no mitigating factors that were

unanimously agreed upon by all the jurors. The jury therefore

delivers a verdict of death without ever weighing the

aggravating circumstance against the mitigating factors.

Hackett, 212 F. Supp. 2d at 411-12.

Finally, the majority correctly notes that Pennsylvania adopted changes to its

verdict slip subsequent to Hackett's trial, see Maj. Op. at 37 n.14, but the majority

seems to believe that these changes pertain to "weighing cases" only and that "no

similar change was made to strengthen the directive that a jury's finding of no

mitigating circumstance must be unanimous." Id. The changes to Pennsylvania's

model jury instructions suggest otherwise.

The present model instructions, adopted after Hackett's trial, provide in

pertinent part as follows with regard to how a Pennsylvania jury should reach its

capital sentencing findings and record them on the verdict slip:

You have been given a sentencing verdict slip on which to

record your verdict and findings. I shall now give you further directions on how to go about reaching a verdict, making findings, and using the verdict slip.

. . .

As I told you earlier, and as the verdict slip indicates, you must agree unanimously on one of two general findings before you can sentence the defendant to death. They are a finding that there is at least one aggravating circumstance and no mitigating circumstances or a finding that there are one or more aggravating circumstances which outweigh any mitigating circumstances. (In deciding whether aggravating circumstances outweigh mitigating circumstances, do not simply count their number. Compare the seriousness and importance of the aggravating with the mitigating circumstances.) If you all agree on either one of the two general findings then you can and must sentence the defendant to death.

When voting on the general findings, you are to regard a particular *aggravating* circumstance as present only if you all

66

agree that it is present.  On the other hand, each of you is free

to regard a particular *mitigating* circumstance as present

despite what other jurors may believe.  (This different

treatment of aggravating and mitigating circumstances is one

of the law's safeguards against unjust death sentences.  It

gives a defendant the full benefit of any mitigating

circumstances. . . .)

PA. SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS Nos. 15.2502F(7) & 15.2502H(1)-(2) (2000).  The Committee Note to instruction 15.2502H explains that the final portion of the above-quoted language is intended to "tell the jurors that they are to make collective decisions about the aggravating circumstances but that they ultimately are to make individual decisions about mitigating circumstances."

    This addition to the model instructions– coupled with the decision no longer to use the word "unanimously" in close proximity to "mitigating circumstances"– plainly seeks to eliminate the previous ambiguity as to whether all jurors had to agree on a mitigating factor.  The new model instructions state that "each of you is free to regard a particular *mitigating* circumstance as present despite what other jurors may believe"– language that should reduce the risk, present even in a "non-weighing case" like Hackett's, that the jury would interpret its mandate as requiring a death sentence

67

only if it unanimously agreed that there was no mitigating circumstance of common agreement. The new instructions would leave a unanimous finding of "no mitigating circumstance" more likely to reflect that each juror actually considered and rejected all mitigating evidence. Notably, in Commonwealth v. Coss, 726 A.2d 333 (Pa. 1999), two concurring Justices of the Pennsylvania Supreme Court opined that the jury instruction in Frey, which mirrors the Banks and Hackett instruction, "contains a degree of imprecision that can be avoided merely by employing Pennsylvania Suggested Standard Criminal Jury Instruction 15.2502H(3) [currently 15.2502H(2)], which removes any doubt concerning a juror's role in assessing mitigating circumstances." Id. at 338-39. These Justices noted that they "would affirmatively require Pennsylvania trial courts to instruct capital sentencing juries in accordance with the standard instruction."

Pennsylvania's well-intended effort to clarify its sentencing procedure does not in itself indicate that its former instructions and verdict slip were constitutionally infirm. Nevertheless, the above-noted revisions, as well as the views expressed by the concurring Pennsylvania Justices in Coss, lend support to the conclusion that an instruction on unanimity that merely tracks the language of 42 Pa. Cons. Stat. § 9711(c)(1)(iv) is imprecise and subject to an impermissible risk of jury misinterpretation on whether unanimity is required to consider mitigating evidence. Moreover, these revisions further support the view that there was insufficient clarity in

68

the instructions and verdict slip at Hackett's trial to permit this Court to uphold his sentence of death on the sole ground that the jury found "no mitigating circumstance." At the very least, my colleagues in the majority should find themselves in agreement with the following observation from Mills:

> The decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make. Evolving standards of societal decency have imposed a correspondingly high requirement of reliability on the determination that death is the appropriate penalty in a particular case. The possibility that [Hackett]'s jury conducted its task improperly certainly is great enough to require resentencing.

Mills, 486 U.S. at 383-84.

## III.

For these reasons, I conclude that Hackett has established a Mills error, and that the state court's rejection of this claim resulted in an unreasonable application of clearly established federal law. I therefore would affirm the District Court's order vacating Hackett's sentence and allow Pennsylvania to resentence him to life imprisonment or conduct a new capital sentencing proceeding.