**Joel JEAN, Petitioner,**

v.

**DEPARTMENT OF HOMELAND SECURITY, Respondent.**

Docket No. 03–4728.

United States Court of Appeals, Second Circuit.

Sept. 27, 2005.

Nicholas J. Mundy, Kuba, Mundy & Associates, New York, NY, for Petitioner.

Christine Y. Wong, Assistant United States Attorney, Southern District of New York (Kathy S. Marks, Assistant United States Attorney; David N. Kelley, United States Attorney), New York, NY, for Respondent, of counsel.

Present: MESKILL, JACOBS, and STRAUB, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the petition for review is hereby **DENIED**.

Joel Jean ("Jean"), a native and citizen of Haiti, petitions this Court pursuant to section 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252, for review of a March 21, 2003, decision of the Board of Immigration Appeals ("BIA"). The BIA summarily affirmed the May 2, 2000, decision of the Immigration Judge ("IJ") denying Lin's application for asylum and withholding of removal and ordering his removal from the United States. We assume the parties' familiarity with the facts, decision below, and issues on appeal.

Jean was arrested while entering the country from Canada on false papers, and applied for asylum. In his credible fear interview, he stated that he feared persecution because he was part of a band, Jelo Star, which recorded and performed music with lyrics critical of the government. He told the interviewer that, because of his involvement with Jelo Star, the police had stopped him repeatedly and visited his house "five or six times" to interrogate him about his and others' activities. Jean denied having any other problems with the government, or having ever been detained. When asked whether he belonged to any other political or social groups, Jean men-

tioned that he was part of a group called Movement for Youth of Avenue Poupelard ("MJAP"), but described this group in passing as a civic group and did not indicate that he feared persecution based on his connection with the group.

Subsequently, Jean based his asylum application on his membership in the MJAP—or rather, in a wing of the MJAP which, after Aristide's return to power in 1994, favored immediate elections. Jean's I–589 affidavit describes multiple incidents in which men identifying themselves as the police stopped Jean and searched his car, person, or home. The affidavit also states that his home was vandalized and burned on multiple occasions and notes were left warning him to cease his political activities, and that the police, when he contacted them, were unable or unwilling to catch the perpetrators. Finally, the affidavit states that in 1995, nearly four years before Jean left Haiti, he was kidnapped by armed men who interrogated him for two hours and warned him, on pain of death, to cease his political activities. The affidavit does not mention that Jean experienced any trouble because of his musical band.

At Jean's hearing the IJ repeatedly expressed frustration at what he felt was a tendency on Jean's part to embellish his story more and more at each stage of his application (from credible fear interview to asylum application to hearing testimony). The IJ noted significant discrepancies— which Jean failed to explain convincingly— between Jean's affidavit and his testimony on the issue of when (*i.e.,* in what year) the alleged harassment started, for how many hours he was interrogated by his kidnappers, and how badly his house was damaged by the alleged arson attacks. The IJ also took into account the lack of any

corroboration for Jean's story, such as testimony from Jean's siblings and aunt, who reside in the United States.[1] Finally, the IJ noted Jean's use of false documents to enter the United States as an adverse credibility factor. Based on his credibility concerns, in combination with the lack of corroboration, the IJ found that Jean had not met his burden of establishing eligibility for any of the forms of relief sought. The BIA summarily affirmed.

Where the BIA summarily affirms the IJ's decision, we review the decision of the IJ directly. *Secaida–Rosales v. INS,* 331 F.3d 297, 305 (2d Cir.2003). "[W]e review factual findings under the substantial evidence standard .... [under which] a finding will stand if it is supported by reasonable, substantial, and probative evidence in the record when considered as a whole." *Id.* at 307 (internal citation and quotation marks omitted). By contrast, "when the situation presented is the BIA's application of legal principles to undisputed facts, rather than its underlying determination of those facts or its interpretation of its governing statutes, our review of the BIA's asylum and withholding of deportation determinations is *de novo.*" *Diallo v. I.N.S.,* 232 F.3d 279, 287 (2d Cir.2000) (quotation marks omitted). Board precedent supports adverse credibility findings based on "inconsistent statements, contradictory evidence, and inherently improbable testimony." *Qiu v. Ashcroft,* 329 F.3d 140, 152 n. 6 (2d Cir.2003) (quotation marks omitted).

Upon consideration of the record, we find that the IJ's decision was supported by substantial evidence. The IJ's opinion took note of all of the evidence presented by Jean, and the reasons the IJ gave for doubting Jean's story—principally, the

---

1. According to Jean's testimony, his siblings suffered similar persecution in Haiti, and his   aunt was also familiar with Jean's situation.

continuously-changing nature of his testimony and his failure to shore up that testimony with corroboration—were substantial and grounded in the record. We have considered Jean's remaining arguments on this appeal and find that they are without merit.

For the foregoing reasons the petition for review and motion for stay of removal are **DENIED**. Judge Jacobs concurs in the result.